```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NANCY J. SAMBATARO,                           :
                                              :
                            Plaintiff,        :
                                              :          13-cv-8953 (KBF)
               -v-                            :
                                              :          OPINION & ORDER
COMMISSIONER OF SOCIAL SECURITY,              :
                                              :
                            Defendant.        :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 6, 2015

KATHERINE B. FORREST, District Judge:

Pro se plaintiff Nancy J. Sambataro ("Sambataro" or "plaintiff") seeks reversal of the decision by the Commissioner of Social Security (the "Commissioner" or "defendant") finding that she was not eligible for retirement insurance benefits ("retirement benefits" or "old-age benefits") under Title II of the Social Security Act (the "Act"). (Tr. 12-17.) This case turns on whether the totalization agreement between the United States and Italy—which generally allows claimants to combine work credits accumulated in either country for purposes of establishing eligibility for retirement benefits—entitles plaintiff to credit for over two decades of work in Italy. Plaintiff argues that the totalization agreement requires the Social Security Administration ("SSA") to recognize all of her Italian work credits. Defendant argues that the SSA properly did not recognize most of plaintiff's Italian credits because those credits were not accrued under an agency recognized by the totalization agreement and the implementing protocol.

For the reasons set forth below, plaintiff's motion is GRANTED, defendant's motion is DENIED, and this action is remanded to the Commissioner for further proceedings.

I.   BACKGROUND

Plaintiff was born in 1941.  (Tr. 22.)  After working in the United States for several years (see Tr. 16-17), plaintiff moved to Italy, where she worked between 1971 and 2001 (see Compl. ¶ 8).  While working in Italy, plaintiff accrued 34 weeks of work credits under the agency Istituto Nazionale della Previdenza Sociale ("INPS").  (See Tr. 27.)  Plaintiff accrued the rest of her credits under the agency Istituto Nazionale di Previdenza per i Dipendenti dell Amministrazione Pubblica ("INPDAP").  (See Tr. 21, 138-39.)  According to a letter from the director of INPDAP, plaintiff had been granted an Italian pension commencing on June 1, 2001 based on 26 years and 4 months of work credits.  (Tr. 135-36.)

Plaintiff has been seeking U.S. retirement benefits for over a decade: she filed her first application with the SSA in May 2004 and several thereafter.[1]  (See Tr. 12-13.)  In the course of reviewing plaintiff's applications, the SSA received "IT/USA 3 bis" forms from INPS indicating that plaintiff had 34 weeks of Italian coverage.  (Tr. 27, 232.)  In addition, plaintiff submitted work documents from INPDAP, indicating that she had completed 25 years, 8 months, and 4 days of service under INPDAP;

---

[1] Plaintiff's May 2004 application is not at issue on this appeal.  (Tr. 12.)

The full procedural history of this matter as it unfolded before the SSA is set forth in the November 17, 2011 decision by Administrative Law Judge ("ALJ") David Nisnewitz.  (See Tr. 12-14.) The Court does not recite the full procedural history in this Opinion & Order.

income information for the years 1975 through 2001, excluding 1978, 1988, 1995, and 1997; and a "Request for Correction of Earnings Record" form reporting a total of 24 years and 6 months of work activity.[2]  (See Tr. 13, 44-45, 46, 49-70, 138-39.)  Finally, the SSA translated an Italian document indicating that plaintiff had a total of 26 years, 3 months, and 29 days of work activity.  (Tr. 90-93.)

After several denials from the SSA (see Tr. 28-30, 31-33, 106, 111-13), plaintiff requested an on-the-record decision by an ALJ.  (Tr. 132.)  On November 17, 2011, ALJ David Nisnewitz issued a decision finding that plaintiff had not established eligibility for retirement benefits.  (Tr. 12-17.)  The ALJ determined that plaintiff had earned 20 quarters of coverage for her work in the United States[3] and three quarters of coverage for her work in Italy, for a total of 23 credits—which fell below the 40 credits required for "fully insured" status.  (Tr. 16-17.)  In making this calculation, the ALJ credited plaintiff's 34 weeks of work under INPS, but did not credit her work under INPDAP:

> Although the claimant indicated that her major coverage in Italy was under the Istituto Nazionale di Previdenza per i Dipendenti dell Amministrazione Pubblica (INPDAP), and that this agency had gained equalization with INPS beginning in 1995 and should be recognized under the Totalization Agreement between the United States and Italy, it is not listed among the four agencies identified in the Agreement and is not currently recognized by Social Security as an agency which falls within the U.S.-Italy Totalization Agreement.  To date, there are no amendments to the article identifying the four Italian agencies responsible for uniform policies and procedures.

---

[2] Under the SSA's regulations, claimants are responsible for obtaining and submitting evidence of their eligibility for benefits.  See 20 C.F.R. §§ 404.1926(a), 404.704.

[3] Plaintiff does not dispute that her U.S. work credits were computed correctly.  (See Amended Memorandum of Law in Support of Plaintiff's Motion for a Judgment on the Pleadings ("Pl.'s Mem.") at 1, ECF No. 16.)

(Tr. 16.)

On December 6, 2011, after the ALJ issued his decision, the Italian Parliament issued a decree dissolving INPDAP and transferring its functions to INPS. (See Pl.'s Mem. at 4 & Ex. J.) Plaintiff submitted this information to the Appeals Council, which made it part of the record. (Tr. 7, 248-56.)

On October 18, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 4-7.) The Appeals Council rejected plaintiff's argument that her INPDAP work credits should be counted because INPDAP's functions are now overseen by INPS:

> We thoroughly considered your argument your INDAP [sic] work credits should be counted per the totalization agreement because the institution, INDAP [sic], is now overseen by INPS. The social security scheme formerly under INPDAP has not been encompassed within the material scope of the U.S.-Italian Agreement. The two schemes are separate even though they are being managed by one Social Security Institution, INPS.

(Tr. 5.)

On December 18, 2013, plaintiff filed this action seeking judicial review of the ALJ's decision. (ECF No. 1.) On September 12, 2014, the parties filed cross-motions for judgment on the pleadings. (ECF Nos. 15, 17.) These motions became fully briefed on October 20, 2014.

For the reasons set forth below, plaintiff's motion is GRANTED, defendant's motion is DENIED, and this action is remanded to the Commissioner for further proceedings.

II.     APPLICABLE LEGAL PRINCIPLES

    A.     <u>Entitlement to Retirement Insurance Benefits</u>

The Social Security Act provides for the payment of retirement benefits to an individual who (1) is fully insured; (2) has attained age 62; and (3) has filed an application for benefits.[4]  42 U.S.C. § 402(a).  Under the Act, any individual who has at least 40 work credits, or "quarters of coverage," is fully insured.[5]  <u>Id.</u> § 414(a).

The Act allows the U.S. President to enter into totalization agreements with foreign countries.  42 U.S.C. § 433(a).  Totalization agreements enable claimants who have at least six U.S. quarters of coverage to combine quarters of coverage accrued in the United States with those accrued abroad in order to meet the "fully insured" requirement.  <u>See id.</u> § 433(c)(1)(A).  The Act provides that the Commissioner "shall make rules and regulations and establish procedures which are reasonable and necessary to implement and administer" totalization agreements.  <u>Id.</u> § 433(d).

On May 23, 1973, the United States entered into a totalization agreement with Italy.  <u>See</u> Agreement Between the United States of America and the Italian Republic on the Matter of Social Security, U.S.-It., May 23, 1973, 29 U.S.T. 4263

---

[4] There is no dispute that the second and third requirements are met in this case.

[5] The terms "quarter" and "calendar quarter" mean a period of three calendar months ending March 31, June 30, September 30, or December 31.  <u>Id.</u> § 413(a)(1).  To be credited with a "quarter of coverage," an individual must earn a certain amount of money in wages and/or self-employment income.  That amount varies depending on the calendar year.  For years before 1978, the individual must earn at least $50 in wages or $100 in self-employment income.  <u>Id.</u> § 413(a)(2)(A)(i).  For the year 1978, the individual must earn $250 in wages and self-employment income.  <u>Id.</u> § 413(d)(1).  For years after 1978, the amount of wages and self-employment income an individual must earn to be credited with a quarter of coverage is determined by the Commissioner and published in the Federal Register.  <u>Id.</u> § 413(d)(2).

(the "Agreement"). On November 22, 1977, the two countries signed an administrative protocol for the Agreement. See Administrative Protocol for the Implementation of the Agreement on Social Security between the United States of America and the Italian Republic Signed at Washington, D.C. on May 23, 1973, U.S.-It., Nov. 22, 1977, 29 U.S.T. 4263 (the "Protocol"). The Agreement and the Protocol went into effect on November 1, 1978. They were amended on April 17, 1984, effective January 1, 1986. See Supplementary Agreement Between the United States of America and the Italian Republic on the Matter of Social Security, U.S.-It., Apr. 17, 1984, T.I.A.S. No. 11173.[6]

Eligibility for benefits under the Agreement is determined by reference to the "laws" of the United States and Italy. See Agreement Art. 3.1 ("The present Agreement shall apply to workers who have periods of coverage under the laws, and to their family members or survivors."). Under Article 8 of the Agreement,

> If the laws of one State require completion of periods of coverage as a prerequisite for the acquisition, retention, or recovery of the right to benefits, the agency which applies such laws shall take into consideration, for such purpose, insofar as necessary, the periods of coverage completed under the laws of the other State, as if these were periods of coverage completed under the laws of the first State. Such agency shall take into consideration all the periods of coverage required to ensure the right to the fullest benefits provided for by the laws which it applies.

Agreement Art. 8.2.

---

[6] The Agreement and the Protocol are available on the SSA's website at http://www.ssa.gov/international/Agreement_Texts/italy.html.

The term "agency" is defined as "for each Contracting State any agency, body or authority entrusted with the administration of an insurance system, under the laws specified in Article 2 of this Agreement." Id. Art. 1(e).

The term "laws" is defined as, "in the case of the Italian Republic, the legislation on compulsory general insurance for old-age, disability and survivors, as well as legislation providing benefits which are substitutes for benefits provided by said compulsory general insurance." Id. Art. 2.1(a); see also id. Art 1(c).  In addition, the Agreement applies to Italian "legislation concerning other social security systems for similar cases which will be indicated by the competent authorities of the Italian Republic." Id. Art. 2.2.  Finally, the Agreement applies "to future laws amending or supplementing the laws specified in this article." Id. Art 2.3.

The Agreement provides that "[t]he competent authorities and agencies of the two Contracting States shall assist each other in applying the present Agreement as if they were applying their respective laws." Id. Art. 13.  Further, "[t]he competent authorities of the two Contracting States shall by mutual agreement establish such administrative procedures as may be required to implement [the] Agreement and each competent authority shall designate one coordinating agency or organization to facilitate the application of this Agreement." Id. Art. 14.1.

The Protocol incorporates by reference the definitions set forth in the Agreement.  See Protocol Art. 1.4.  Article 2 of the Protocol—entitled "Agencies

7

Responsible for Implementation"—lists "[t]he agencies responsible for applying this Protocol":

> (a) For the United States of America:
>
> The Social Security Administration;
>
> (b) For the Italian Republic:
>
> - I.N.P.S. (Istituto Nazionale della Previdenza Sociale), General Directorate, Rome, for matters concerning disability, old-age and survivors insurance of employees, farmers, agricultural workers and sharecroppers, artisans, and businessmen;
>
> - E.N.P.A.L.S. (Ente Nazionale di Previdenza e Assistenza per i Lavoratori dello Spettacolo), General Directorate, Rome, concerning disability, old-age and survivors insurance for workers in the entertainment business;
>
> - I.N.P.D.A.I. (Istituto Nazionale di Previdenza per i Dirigenti di Aziende Industriali), General Directorate, Rome, concerning disability, old-age and survivors insurance for managerial personnel in industry;
>
> - I.N.P.G.I. (Istituto Nazionale di Previdenza per i Giornalisti Italiani), General Directorate, Rome, concerning disability, old-age and survivors insurance for professional journalists.

Id. Art. 2.1. The Protocol further lists the SSA (for the United States) and INPS (for Italy) as the "coordinating agencies designated under Article 14.1 of the Agreement to facilitate its application." Id. Art. 2.2. In carrying out their responsibilities, the coordinating agencies

> shall be responsible for the development of uniform policies and procedures and their uniform implementation by the Agencies in their respective States; for providing a channel of communication between the Agencies of one State and the Agencies of the other State; for determining which Agency is competent for the determination of a particular claim; and for facilitating the resolution of any issues that arise between the Agencies of the two States that cannot be resolved directly.

Id. Art. 2.3.

An annotation to the Agreement[7] further explains the role of INPS:

> Italy has one agency, the I.N.P.S., which administers its principal social security system, and a number of smaller agencies which administer the comparable systems for specialized groups of workers. The definition is intended to assure that the U.S. will be required to deal directly with only the agency administering the principal system (as the Italians would be required to deal with only one U.S. agency) and have that agency act for the smaller agencies.

Annotation to Agreement Art. 1(e).

As to the procedure for applying for benefits, the Protocol provides:

> Claimants may avail themselves of their right to benefits under Articles 8 to 12 of the Agreement by filing an application with an Agency of either State, according to the rules of that Agency. Such application must specifically express intent to claim benefits from the Agency of the other State. An application with a Consulate of the United States of America located in the Italian Republic shall be deemed to be filed with the Agency of the United States of America; however, the Consulate of the United States of America with which the application was filed shall transmit, without delay, a copy thereof to the Italian Agency.

Protocol Art. 4.1.

Additional guidelines regarding the Agreement are set forth in the Program Operations Manual System ("POMS"), the SSA's internal procedural guidelines.[8]

---

[7] The online text of the Agreement and the Protocol features annotations explaining each provision of these documents.

[8] The POMS are available at https://secure.ssa.gov/apps10/. "Because these guidelines represent the Commissioner's interpretation of the statutory mandate, they deserve substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute." Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998) (citations omitted); see also Binder & Binder PC v. Barnhart, 481 F.3d 141, 151 (2d Cir. 2007) ("A POMS entry might arguably be evidence of the SSA's public construction of its authorizing statute or the Commissioner's own regulations, a construction that, if consistent with that statute, would be entitled to some level of deference." (citations omitted)).

9

The POMS explain that "[i]n general, Italian Social Security covers all people who work in Italy. A general system administered by Istituto Nazionale della Previdenza Sociale (INPS) covers most workers in the private sector. Several special systems cover workers in specific occupational categories." POMS at GN 1705.015. The POMS provide that the "SSA will credit one U.S. quarter of coverage for every 13 weeks of Italian coverage in a calendar year. (Italian coverage is measured in weeks.)" Id. at GN 1705.120. The listed exceptions are (1) "any Italian coverage credited for periods before 1937," (2) "any week in a calendar quarter that is already credited as a U.S. quarter of coverage," or (3) "more than 4 quarters of coverage for any calendar year." Id.

The POMS set forth the process by which the SSA obtains evidence of claimants' Italian work credits. This process entails obtaining a certification form "IT/USA 3 bis" from INPS. See id. at GN 1706.010.[9] The POMS provide that:

---

[9] The POMS provide the following "guidelines for evaluating certifications":

> The Italian coverage certification form IT/USA 3 bis was designed as a part of an Italian liaison form (IT/USA 3 or IT/USA 5). The liaison form was signed and/or sealed by an INPS official as a means of certifying the correctness and authenticity of its contents including the earnings certification. INPS plans to eliminate the forms IT/USA 3 and IT/USA 5 and will begin sending form IT/USA 3 bis with the transmittal request form IT/ USA 2 which does not have a place for INPS to certify the correctness of the information shown. Also, INPS occasionally sends just the form IT/USA 3 bis with no covering liaison form. The Italian coverage certification should be accepted as correct if it is:
>
> 1. An original, carbon copy or photocopy of the IT/USA 3 bis attached to an Italian liaison form (IT/USA 3 or IT/USA 5), transmittal/request form (IT/USA 2) or letter from INPS (stating that an earnings certification is attached).
> 2. An original, carbon copy or photocopy of the IT/USA 3 bis sent without a covering letter or liaison form but bearing an original signature, stamp or seal from an INPS official.
>
> Refer any case which cannot be accepted using the above criteria to TOAB for further evaluation.

Id.; see also id. at GN 1706.300 ("Italy has agreed to begin using only one transmittal/request form, the IT/ USA 2, to exchange claims and earnings information. However, until this procedure is

>All types of coverage certified by INPS are to be accepted at face value as being creditable; no attempt should be made to question whether a particular type of work was creditable at a particular time under the Italian system.  Also, it is not necessary to examine INPS' certification to determine if all periods of coverage alleged on the application were included in the certification.

Id. at GN 1706.020; see also at 1706.105, 1706.205.

      B.    <u>Judgment on the Pleadings</u>

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." <u>Bank of N.Y. v. First Millennium, Inc.</u>, 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted).  Therefore, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id.</u> (citation and internal quotation marks omitted).

The Court "liberally construe[s] pleadings and briefs submitted by <u>pro se</u> litigants, reading such submissions to raise the strongest arguments they suggest." <u>Bertin v. United States</u>, 478 F.3d 489, 491 (2d Cir. 2007) (citations and internal quotation marks omitted).

      C.    <u>Review of the ALJ's Judgment</u>

The Commissioner and ALJ's decisions are subject to limited judicial review. The Court may only consider whether the ALJ has applied the correct legal

---

adopted by all INPS offices, OIO may continue to receive the Italian liaison forms IT/USA 3 and IT/USA 5.").

standard and whether his findings of fact are supported by substantial evidence. When these two conditions are met, the Commissioner's decision is final. 42 U.S.C. § 405(g); Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

"The ALJ has an affirmative duty to fully and fairly develop an administrative record." Ventimiglia v. Astrue, No. 10 Civ. 3148, 2011 WL 4483654, at *5 (S.D.N.Y. Sept. 28, 2011) (citing Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). The duty to develop the record "arises from the essentially nonadversarial nature of a benefits proceeding." Id. (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)). The reviewing court must make a searching investigation of the administrative record to ensure that the ALJ protected the claimant's rights. Id. (citing Robinson v. Sec'y of Health & Human Servs., 733 F.2d 255, 258 (2d Cir. 1984)).

Because the Court may not properly affirm an administrative action on grounds different from those considered by the SSA, if there are gaps in the administrative record or the ALJ has applied an improper legal standard, the action generally will be remanded for further development of the evidence. Rolon v.

Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014).  In its deliberations, the Court should bear in mind that the Act is "a remedial statute to be broadly construed and liberally applied." Dousewicz v. Harris, 646 F.2d 771, 773 (2d Cir. 1981) (citations omitted).

III. DISCUSSION

The ALJ determined that plaintiff was ineligible for U.S. retirement benefits because she failed to accrue the required 40 quarters of coverage.  In particular, the ALJ found that plaintiff had earned only three Italian quarters of coverage, notwithstanding documentary evidence that plaintiff had worked for over two decades under INPDAP.  The ALJ did not recognize plaintiff's credits under INPDAP because that agency is not among the four agencies designated as responsible for applying the Protocol.  (See Tr. 16.)  Plaintiff argues that the ALJ erred because the Agreement's plain language mandates recognition of credits accrued under any retirement scheme established by Italian law.  The Court agrees.[10]

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." Medellin v. Texas, 552 U.S. 491, 506-07 (2008) (citing Air France v. Saks, 470 U.S. 392, 396-97 (1985)); see also Sanchez-Llamas v. Oregon, 548 U.S. 331, 346 (2006) ("An international agreement is to be interpreted in good faith in

---

[10] Because the Court finds that the ALJ's interpretation is contrary to the Agreement's plain language, it need not address plaintiff's further argument that, in any event, INPDAP has been dissolved and its functions are now overseen by INPS, mandating recognition of her work credits even under the ALJ's interpretation.  Evidence of the dissolution has been made part of the record in this case (Tr. 7), and the ALJ shall consider it, along with the other evidence, on remand.

13

accordance with the ordinary meaning to be given to its terms in their context and in the light of its object and purpose." (quoting 1 Restatement (Third) of Foreign Relations Law of the United States § 325(1) (1986)) (internal quotation marks omitted)). Here, the plain text of the Agreement requires the SSA to consider "the periods of coverage completed under the laws of" Italy in determining whether a claimant like plaintiff is eligible for retirement benefits. Agreement Art. 8.2. The term "laws" is defined very broadly: The Agreement applies to Italian "legislation on compulsory general insurance for old-age, disability and survivors, as well as legislation providing benefits which are substitutes for benefits provided by said compulsory general insurance." Id. Art. 2.1(a); see also id. Art 1(c). In addition, the Agreement applies to Italian "legislation concerning other social security systems for similar cases which will be indicated by the competent authorities of the Italian Republic." Id. Art. 2.2. This provision "makes it possible for the Agreement to apply to certain special systems in Italy, such as those for employees of public utilities which are not generally considered to be a part of the general system." Annotation to Agreement Art. 2.2. Finally, the Agreement applies "to future laws amending or supplementing the laws specified in this article." Id. Art. 2.3. In sum, the SSA must recognize any work credits accrued under a social security scheme established by Italian law. Notably, the Agreement (in contrast to the Protocol) does not single out any particular Italian agencies.

The Agreement's plain language is consistent with its purpose—to ensure that claimants receive "the fullest benefits provided for by the laws." Agreement

Art. 8.2; see also 20 C.F.R. § 404.1901 ("Where necessary to accomplish the purposes of totalization," the SSA administers totalization agreements, "as appropriate and within the limits of the law, to accommodate the widely diverse characteristics of foreign social security systems."). Notably, plaintiff had been granted an Italian pension based on 26 years and 4 months of work credits, suggesting that her INPDAP credits were "completed under the laws of" Italy. (See Tr. 135-36.)

The Protocol, on which the ALJ relied, does not redefine the Agreement's substantive scope—it simply establishes administrative procedures implementing the Agreement's provisions. See Agreement Art. 14.1 ("The competent authorities of the two Contracting States shall by mutual agreement establish such administrative procedures as may be required to implement [the] Agreement."). Article 2 of the Protocol—entitled "Agencies Responsible for Implementation"—lists four agencies "responsible for applying this Protocol." Protocol Art. 2.1. Under the ordinary meaning of the words "implementation" and "applying," these four agencies are charged with carrying out the Agreement—that is, performing various administrative tasks in connection with benefits claims. See Merriam-Webster, http://www.merriam-webster.com/dictionary/apply (last visited Apr. 6, 2015) (defining "apply" as, inter alia, "put into operation or effect"); Merriam-Webster, http://www.merriam-webster.com/dictionary/implement (last visited Apr. 6, 2015) (defining "implement" as, inter alia, "carry out, accomplish; especially: to give practical effect to and ensure of actual fulfillment by concrete measures"). The

annotation to Article 2 of the Protocol confirms this, explaining that the four agencies are "those agencies which will actually deal with claims." Annotation to Protocol Art. 2.

In denying plaintiff's applications, the ALJ interpreted Article 2 of the Protocol to restrict the SSA to considering only Italian credits <u>accrued</u> under one of the four listed agencies.[11] This interpretation excludes many claimants who would otherwise qualify for totalization benefits. While the Italian Social Security system generally "covers all people who work in Italy," POMS at GN 1705.015, the four agencies listed in the Protocol cover only certain categories of employees. See <u>id.</u> (INPS "covers most workers in the private sector"); Protocol Art. 2.1 (the remaining three agencies cover workers in the entertainment business, managerial personnel in industry, and professional journalists). In particular, few, if any, public sector employees accrue their credits under one of these four agencies.[12]

The ALJ did not set forth any bases for his restrictive interpretation, and did not discuss any of the provisions of the Agreement in his decision. In particular, the ALJ did not reconcile his denial with the fact that Italy had recognized all of plaintiff's work credits in granting her a pension. While the "Executive Branch's interpretation of a treaty is entitled to great weight," <u>Swarna v. Al-Awadi</u>, 622 F.3d 123, 133 (2d Cir. 2010) (citation and internal quotation marks omitted), the ALJ's

---

[11] The ALJ's decision appears to rely <u>exclusively</u> on the fact that INPDAP is not among the four agencies listed as responsible for applying the Protocol. The ALJ did not provide any further basis for his statement that INPDAP "is not currently recognized by Social Security as an agency which falls within the U.S.-Italy Totalization Agreement." (Tr. 16.)

[12] Plaintiff alleges—and defendant does not dispute—that INPDAP provides coverage to public employees.

16

interpretation here must be rejected as contrary to the plain meaning and purpose of the Agreement and the Protocol, as discussed above.  See Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 180 (1982) ("The clear import of treaty language controls unless 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.'" (quoting Maximov v. United States, 373 U.S. 49, 54 (1963))).  The Agreement is clear that the SSA must recognize all credits completed "under the laws" of Italy, and there is no evidence of any intent to exclude particular swaths of the workforce from coverage.  (To the contrary, the annotation to Article 2.2 of the Agreement suggests that the Agreement applies to employees of public utilities—which do not appear to be covered by any of the four agencies listed in the Protocol.)

The Court recognizes that the Agreement and the Protocol contemplate that the United States will communicate only with INPS—as Italy's "coordinating agency"—in processing claims for totalization benefits.  See Protocol Art. 2.3 (the coordinating agencies "shall be responsible . . . for providing a channel of communication between the Agencies of one State and the Agencies of the other State"); Annotation to Agreement Art. 1(e) (the definition of "agency" "is intended to assure that the U.S. will be required to deal directly with only the agency administering the principal system"—INPS); POMS at GN 1706.010 (describing a process by which the United States obtains a "IT/USA 3 bis" form from INPS).  Here, the "IT/USA 3 bis" forms that the SSA obtained from INPS indicate that plaintiff has only 34 weeks of Italian credits.  However, the ALJ cannot, consistent

with the Agreement and his duty to fully and fairly develop the record, rely on one form from INPS and ignore official records indicating that plaintiff had accrued work credits under a different agency.[13]  The ALJ was obligated to investigate the discrepancy and ascertain why INPDAP did not certify plaintiff's INPDAP credits.

IV.   CONCLUSION

Accordingly, plaintiff's motion is GRANTED, defendant's motion is DENIED, and this case is remanded to the Commissioner for further proceedings.  On remand, the ALJ shall further develop the administrative record as to plaintiff's work credits under INPDAP, apply the correct standard under the Agreement, and issue a new decision consistent with this Opinion & Order.  In doing so, the ALJ shall obtain a new "IT/USA 3 bis" form from INPS,[14] along with any other evidence it deems appropriate.[15]

---

[13] The Court is mindful that POMS provide that "it is not necessary to examine INPS' certification to determine if all periods of coverage alleged on the application were included in the certification." POMS at GN 1706.020.  However, the Court does not interpret this provision to mean that the SSA is not obligated to develop the record when presented with conflicting documentary evidence of a claimant's work credits.

[14] The "IT/USA 3 bis" forms that the ALJ considered were issued prior to the Italian decree dissolving INPDAP and transferring its functions to INPS.  It is entirely possible, therefore, that a new form would include plaintiff's INPDAP credits.

[15] Among the issues that may or may not arise on remand is whether plaintiff's receipt of an Italian pension affects her eligibility for U.S. retirement benefits.

The Clerk of Court is directed to terminate the motions at ECF Nos. 15 and 17, to terminate this action, and to remand this action to the Commissioner for further proceedings consistent with this Opinion & Order.

Dated:     New York, New York
          April 6, 2015

                                            KATHERINE B. FORREST
                                            United States District Judge

CC:    Nancy J. Sambataro
        8 Avondale Rd.,
        Yonkers, NY 10710